# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TIMIKA SMITH | ) |
| | ) |
| Plaintiff, | ) Case No. 15-cv-1386 |
| | ) |
| v. | ) Judge Sharon Johnson Coleman |
| | ) |
| CONCENTRA, INC. and CONCENTRA | ) |
| HEALTH SERVICES, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Timika Smith, brought this action against her employer, Concentra Health Services, Inc., and Concentra, Inc. (hereinafter "Concentra"), alleging that she was discriminated against based on her religion, that she was discriminated against based on her disability, and that Concentra violated the Family Medical Leave Act. Concentra now moves this Court to grant summary judgment on all counts. For the reasons set forth herein, that motion [35] is granted in part and denied in part.

**Background**

The following facts are undisputed except where otherwise noted. Smith was employed as a Front Office Specialist by Concentra Health Services, Inc. at its Ashland Avenue facility in Chicago. As a Front Office Specialist, Smith was responsible for greeting patients and visitors, admitting and checking out patients, obtaining authorizations to process patients for needed services, answering the telephones, faxing documents, filing paperwork, and maintaining office inventory. Smith also assisted in performing patient drug screens, which involved processing paperwork, collecting the specimen from the patient, and securing, packaging, and storing the specimen.

Concentra also employed medical assistants, who were responsible for taking patient's vital signs, performing ancillary medical tests, assisting doctors during examinations and treatments,

operating sterilization equipment, performing drug screens, dispensing medications, and performing front office duties as required. In order to become a Medical Assistant with Concentra, an individual must have completed a medical assistant degree or certificate program as well as Concentra's month-long internal certification program. Medical Assistants can perform all of the duties of Front Office Specialists, but Front Office Specialists can only perform a limited number of Medical Assistant duties.

Smith graduated from Olympia College's medical assistant program. Concentra hired Smith as a Front Office Specialist, and accordingly did not provide Smith with the internal training necessary to work as a Medical Assistant. When Smith began working for Concentra, she worked from Monday through Friday from 7:00 AM to 4:00 PM. Two Medical Assistants also began work at 7:00 AM, but Smith was the only Front Office Specialist whose shift started at 7:00 AM.

Smith is Muslim and is a member of the Moorish Science Temple of America. As part of her membership in the Moorish Science Temple of America, Smith was expected to participate in daily religious programs that began between 4:00 PM and 6:00 PM. On some occasions, Smith would pick up her daughter from school before going to the program. The parties dispute whether Smith's original work schedule was set in order to accommodate her religious practices or whether it was simply the time slot that needed to be filled when she was hired. Either way, the parties agree that Smith preferred her assigned shift because it allowed her to pick her daughter up from school and to attend her religious programming.

In January 2014 Carla Lowe became the Center Operations Director at the Ashland facility. In February, Lowe met with Smith to inform her that she would be changing to a 9:00 AM to 6:00 PM shift. This decision was based on Concentra's determination that it was unnecessary to have a dedicated Front Office Specialist prior to 9:00 AM because the Medical Assistants on the 7:00 AM to 4:00 PM shift could perform the front office functions until 9:00 AM and that it would be

preferential to have more staff members available later in the day when the center tended to be busier.  It is disputed whether these motivations were contemporaneously related to Smith.  Smith informed Lowe that she could not work past 4:00 PM, because she needed to be at her temple prior to 6:00 PM each day and she sometimes needed to pick up her daughter before going to the temple. Smith subsequently met with Lowe and Ms. Gross, the Area Operations Director.  After offering to let Smith take a break to fulfill her prayer accommodations, Gross ultimately offered to accommodate Smith's religious schedule by allowing her to work from 9:00 AM to 4:00 PM, which would allow her to keep her full time benefits but would mean that she could only work 30 hours per week (the Ashland Avenue facility was not open on the weekend).  Smith asked if she could work as a Medical Assistant on the 7:00 AM to 4:00 PM shift, but was told that she could not because she had been hired as a Front Office Specialist and was not certified to act as a Medical Assistant.  There is no evidence to suggest that there was a vacant Medical Assistant position on the 7:00 AM – 4:00 PM shift.

     Smith's attorney subsequently sent Concentra a letter requesting that Concentra permit Smith to retain her current schedule in light of her religious obligations.  Concentra replied that Smith's shift had changed because the volume at the center dictated that an employee who was qualified to work both in the front and back offices work the 7:00 AM – 4:00PM shift.  Concentra further explained that Smith was not qualified to work as a Medical Assistant on that shift, and that if Smith continued to start work at 7:00 AM the center would be overstaffed or would risk being unable to meet patient needs.  Finally, Concentra noted that it had offered to let Smith leave at 5:30 PM to attend her religious services, but that Smith had rejected this offer because she would not have time to pick up her daughter and take her home before the services.  On March 17, 2014, Smith began working the 9:00 AM to 4:00 PM shift that Concentra had offered her as an accommodation.  She continued to do so for the remainder of her employment with Concentra.

3

On September 8, 2014, Smith was involved in a car accident that caused injury to her cervical spine, left wrist, and hand. When Smith returned to work on September 15, 2014, she provided Lowe with her hospital discharge papers and a note from her primary care physician indicating that she did not have any work restrictions. Smith subsequently informed Lowe that she did not want to do drug screens because the wrist brace that she was wearing on her left wrist interfered with her ability to unscrew specimen cap lids, and was informed that she would need to provide a doctor's note to that effect.

On September 26, 2014, Smith presented Lowe with a doctor's note stating "Certify above patient is under my care for sprain of left wrist and <u>unable</u> to use left hand. Has limited use of left hand. Unable to use writing or screwing bottles." Lowe read this note as stating that Smith could not use her left hand in any capacity. The doctor who wrote the note testified that he had intended the note to convey that Smith could not do anything with her left hand. Based on the restriction contained in the note, Lowe concluded that Smith could not check patients in, check patients out, process paperwork, perform drug screens, or perform blood alcohol tests. Lowe also observed that Smith was in fact performing her duties with the use of both hands in contravention of her medical restriction, but that she was working at a slower rate, leading to patient backups and unfinished work at the end of Smith's shift. Smith maintains that she could perform all of her duties aside from drug screenings using both her left hand and right hand. Smith alternatively maintains that she could have kept up with all of her duties except drug screenings without using her injured left hand at all.

On October 1, 2014, Smith met with Lowe, the Ashland Center's Medical Director, and Ms. Morrissey, a Concentra Human Resources consultant. Smith was instructed to take FMLA leave because she was in pain while working. Smith expressed her desire to keep working and asked the defendants to accommodate her with something that did not require her to twist her left wrist. After this meeting, Smith's attorney asked for a written explanation detailing how Smith's physical

4

restrictions prevented her from carrying out the duties of her position with or without a reasonable accommodation. The response noted that Smith was not performing core functions of her job with the limited use of her left arm and that Smith had indicated that she was in pain when she attempted to perform her duties. The letter further enumerated that Smith was unable to perform the majority of her duties, and had expressly acknowledged that she could not perform her medical support duties such as drug screening.

On the same date Smith called Liberty Mutual and started the FMLA leave application process. The chronology of events that followed becomes quite confusing. From the outset, Liberty Mutual informed Smith that her leave would begin on October 1, 2014 and end on November 1, 2014. On October 3, 2014, Liberty Mutual informed plaintiff that she was required to complete a Certification of Healthcare Provider form within 17 days or her leave would be denied. Smith failed to provide that form, and on October 20, 2014 Liberty Mutual informed Smith that her FMLA request had been denied. Smith subsequently contacted Liberty Mutual and submitted her certification form.

On November 3, 2014, Liberty Mutual sent Smith a letter stating that her leave from October 1, 2014 to November 1, 2014 had been approved. The letter further provided that Smith should contact her employer two days prior to the end of her leave to schedule her return for work. Smith also received a letter from Liberty Mutual, dated November 3, 2014, informing her that her leave had closed two days earlier on November 1st and that she was no longer eligible for leave. Smith subsequently attempted to contact Lowe. Smith and Lowe attempted to reach each other by telephone on multiple occasions, but ultimately were unable to do so. Smith stopped attempting to call Lowe after November 11. Lowe, in turn, was instructed to temporarily refrain from making further attempts to contact Smith on November 12, 2014 while Morrissey consulted with counsel. On November 19, 2014, Morrissey sent Smith a letter instructing her to call Morrissey by November

5

24, 2014 to discuss her employment status, and stating that if Smith did not do so she would be considered to have voluntarily resigned her employment. Smith, however, maintains that she no longer lived at the address that Morrissey sent the letter to. Smith asserts that when she moved she changed her address in Concentra's computer system and that Lowe was aware of the address change, although Smith's employment records at that time continued to reflect the incorrect address. On December 1, 2014, having not heard from Smith, Concentra terminated Smith's employment

Concentra's employee handbook, which Smith received, provides that employees who are absent without permission or explanation for three consecutive days may be considered to have voluntarily resigned. It also provides that an employee on FMLA leave must contact Concentra every 30 days regarding the status of the condition and the intention of returning to work, and that the employee must give notice as soon as possible if the leave is extended or altered.

Following her termination, Smith filed a charge of discrimination with the EEOC. After receiving a notice of right to sue, she initiated this lawsuit.

**Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether a genuine issue of material fact exists, this Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, "[m]erely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**Discussion**

*Discrimination*

Smith's complaint alleges that she was discriminated against based on her religion as a result of Concentra's failure to provide her with a reasonable accommodation. In order to make out a prima facie case of religious discrimination based on the failure to provide a reasonable accommodation, a plaintiff must show (1) that the observance or practice conflicting with an employment requirement is religious in nature; (2) that she called the religious observance or practice to her employer's attention; and (3) that the religious observance or practice was the basis for her discharge or other discriminatory treatment. *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997). Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to reasonably accommodate the religious practice or to show that any reasonable accommodation would result in undue hardship.

Here, disputes of material fact remain regarding whether Smith can make out a prima facie case of religious discrimination, because the parties dispute the extent to which Smith's refusal to work after 4:00 PM was motivated by the requirements of her religious beliefs as opposed to her need to pick her daughter up from school. Assuming without deciding that Smith can make out a prima facie case, however, the undisputed facts establish that Concentra reasonably accommodated Smith's religious practices.

A reasonable accommodation is one that "eliminates the conflict between employment requirements and religious practices." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986). The reasonable accommodation requirement is meant to "assure the individual additional opportunity to observe religious practices, but it [does] not impose a duty on the employer to accommodate at all costs." *Id.* A reasonable accommodation need not be an employee's preferred accommodation or the most beneficial accommodation for the employee; once

the employer offers an alternative that reasonably accommodates the employee's religious needs the statutory inquiry is at an end. *Id.*

An employer may fail to offer a reasonable accommodation only when offering an accommodation would cause it to incur an undue hardship. *Trans World Airlines v. Hardison*, 432 U.S. 63, 68–69, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977). An undue hardship exists, as a matter of law, when an employer incurs anything more than a de minimis cost to reasonably accommodate an employee's religious beliefs. *Id.* at 84.

Here, it is undisputed that Smith was originally scheduled to work from 7:00 AM to 4:00 PM, although the parties dispute whether those hours were arrived at in an attempt to accommodate Smith's religious practices or not.[1] It is also undisputed that Concentra subsequently decided that it no longer wished to staff a Front Office Specialist between 7:00 AM and 9:00 AM based on low patient volumes in the morning and high patient volumes later in the day, and that Smith's hours were accordingly adjusted to 9:00AM to 6:00 PM (although it is disputed whether Smith was informed of the reasons for the decision to modify her hours). After Smith informed Concentra that those hours would not be viable as a result of her personal and religious obligations, Concentra allowed Smith to end her shift at 4:00 PM. This adjustment eliminated the conflict between Smith's schedule and her religious obligations and thus constituted a reasonable accommodation.

Smith argues that permitting her to work a 9:00 AM to 4:00 PM shift was not a reasonable accommodation of her religious needs because it shortened her workday by two hours and consequently diminished her earnings. But Smith offers, and this Court is aware of, no authority requiring that reasonable accommodations permit an employee to work as many hours as they otherwise would be entitled to. *See Basheeruddin v. Advocate Health and Hosps. Corp.*, 15-cv-4131, 2016

---

[1] The court notes that it is irrelevant whether Smith received a previous accommodation or not; the inquiry is the same either way. *See, e.g., Heller v. EBB Auto Co.*, 8 F.3d 1433(9th Cir. 1993) (applying the general standard where an employer withdrew a previously offered accommodation).

8

WL 3520160, at *5 (N.D. Ill. June 27, 2016) (Darrah, J.) (holding that an employer reasonably accommodated an employee who requested to work part-time during Ramadan by permitting her to take a leave of absence during the entirety of Ramadan).

Smith also argues that Concentra should have accommodated her in a different manner so that she could retain her previous schedule. As previously noted, however, once a reasonable accommodation has been made no further inquiry into other possible reasonable accommodations is required. *Philbrook*, 479 U.S. at 70. All of the alternative accommodations that Smith proposes, moreover, would have imposed undue hardship on Concentra.

Smith first argues that Concentra should have accommodated her religious needs by returning her to a 7:00 AM -4:00 PM schedule as a Front Office Specialist. Concentra, however, has set forth undisputed facts establishing that it was not necessary to have a Front Office Specialist on duty during those times and that it was necessary to have Front Office Specialists available later in the day. Accordingly, accommodating Smith in this manner would have imposed costs on Concentra sufficient to constitute an undue hardship. *Trans World Airlines*, 432 U.S. at 84.

Smith further argues that, because she was educated to be a Medical Assistant, she could have been accommodated by being allowed to retain the 7:00 AM – 4:00 PM shift as a Medical Assistant. The parties dispute the extent of training that would have been required for this to occur, but it is undisputed that Smith was not employed as a Medical Assistant and that there were no vacant Medical Assistant positions on the 7:00 AM – 4:00 PM shift. It is well established that an employer is not required to engage in reasonable accommodations that would require imposing shift or job changes on other employees. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 81, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977); *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 317 (4th Cir. 2008) ("[A]n employer is not required to adversely impact or infringe on the rights of other

9

employees when accommodating religious observances."). Accordingly, Concentra is entitled to summary judgment on Smith's religious discrimination claim.

Smith's complaint also alleges that Concentra discriminated against her based on a disability in violation of the Americans with Disabilities Act (ADA) by failing to accommodate her disability and by terminating her based on her disability. In order to survive summary judgment on this claim, Smith must introduce evidence showing that (1) she is a qualified individual with a disability, (2) her employer was aware of her disability, and (3) her employer failed to reasonably accommodate that disability. *EEOC v. Sears Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005).

In order to establish that she is a qualified individual with a disability, Smith must demonstrate that (1) she has a physical or mental impairment that substantially limits one of her major life activities, (2) she has a record of such impairment, or (3) she is regarded as having such impairment. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007) (citing 42 U.S.C. § 12102(2)(A)). A plaintiff has an impairment that substantially limits a major life activity when the plaintiff is "unable to perform a major life activity that the average person in the general population can perform or is significantly restricted as to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Id.* (citing 29 C.F.R. § 1630.2(j)(1)(i)–(ii)). Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Factors to be considered in determining whether an individual is substantially limited in a major life activity include the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long term impact of the impairment. 29 C.F.R. § 1630.2(j)(2).

Here, Smith has not presented any evidence to support her claim that she suffered from a physical or mental impairment that substantially limited one of her major life activities. The undisputed facts establish that Smith's wrist was injured, that she was required to wear a wrist brace, and that she was unable to use it for writing or unscrewing specimen caps. They also establish that Smith complained of pain in her left wrist that was exacerbated by standing, having her hand at her side, twisting, and making turns while driving, and that she sought therapy for these symptoms. None of these impairments, however, rise to the level of interfering with a major life activity. *See, e.g., Trelenberg v. 21st Century Ins. and Financial Services, Inc.*, Civil Action No. 12-3603, 2014 WL 1632237, at *3 (E.D. Pa. Apr. 24, 2014) (holding that the plaintiff, who suffered continuing pain from tendonitis, had to wear a wrist split continuously, and could not lift more than 20 pounds, was not disabled within the meaning of the ADA because her injuries were not substantially limiting); *Swann v. US Foods, Inc.*, No. 14-cv-1409, 2015 WL 3793739, at *5 (E.D. Va. June 17, 2015) (recognizing that a wrist injury that resulted in the employee being placed on light duty did not substantially limit major life activities). Indeed, Smith's assertion that she was disabled is expressly belied by her testimony that she could have continued to perform her job with only minor accommodations and that her pain and other symptoms were entirely manageable.

A dispute of material fact does exist, however, regarding whether Concentra regarded Smith as being disabled. Concentra's representatives consistently testified that they read Dr. Mora's note as stating that Smith could not use her left hand for any purpose. They also testified that Smith was in pain when she attempted to use her hand. Moreover, in its communications with Smith, Concentra explicitly referenced its obligation to provide a reasonable accommodation under the ADA, which further suggests that Concentra might have viewed Smith as being disabled. Moreover, Concentra concluded that Smith could not complete even simple tasks such as explaining paperwork to patients, filing paperwork, or maintaining office supply and form inventories. Concentra's belief

that Smith could not use her hand at all, coupled with its belief that she could not perform fairly basic employment tasks and its representation that it viewed her limitations as a matter within the scope of the ADA, create a genuine dispute of material fact as to whether Concentra believed that Smith was disabled within the meaning of the ADA.

A further dispute of fact exists regarding whether Concentra could have reasonably accommodated that perceived disability. Smith has testified that, even if she could not use her left hand, she could have performed all of the essential functions of her role, with the sole exception of administering drug tests. Concentra, however, has presented testimony indicating that Smith could not effectively perform the majority of her tasks without the use of her left hand and that Smith was in pain when she attempted to do so. There exists a question of fact regarding whether Smith could have performed the essential functions of her position with a reasonable accommodation.[2]

*Smith's Termination*

Smith also contends that she was terminated as a result of her disability. Because this and Smith's FMLA retaliation claim turn on the same facts, this Court will consider those claims together.

Smith alleges that Concentra violated the Family Medical Leave Act by terminating her while she was on FMLA leave. Although the undisputed evidence shows that Smith was not terminated until after her FMLA leave had expired, this Court elects to read Smith's complaint as alleging that she was fired in retaliation for having taken FMLA leave. Such a claim can be supported by both direct evidence (establishing a causal connection between the employee's FMLA leave and her termination) and indirect evidence (showing that the employee was treated less favorably than similarly situated employees who were not on FMLA leave). *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 633–635 (7th Cir. 2009). The same fundamental analysis applies to Smith's claim that she was

---

[2] Concentra argues that placing Smith on long-term FMLA leave was a reasonable accommodation. But Concentra offers, and this Court is aware of, no authority to support that assertion.

terminated as a result of her disability. *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 (7th Cir. 2015). In conducting its analysis, this Court does not distinguish between direct and indirect evidence, but considers whether the evidence, on the whole, would permit the factfinder to conclude that the plaintiff's FMLA status or disability caused her termination.

Here, Smith offers no evidence sufficient to link her termination to her FMLA status or disability. The undisputed evidence reflects that Smith was terminated because she failed to return to work or to respond to Concentra's communications after her FMLA leave expired on November 1, 2014. By failing to contact Concentra or report to work, Smith violated multiple employment policies that she admitted she was aware of.[3] Concentra, moreover, sent Smith a letter stating that she would be terminated if she did not respond by a certain date; although that letter might not have reached Smith, it evinces a plausible motive for Smith's termination (i.e. her failure to timely respond). Smith offers no evidence to suggest discriminatory or retaliatory motivation on Concentra's part. Smith does not identify any similarly situated employees who received preferable treatment to her. And, although Smith disputes many of the circumstances surrounding her FMLA leave, she does not dispute that she was not meeting Concentra's legitimate expectations, as set forth in the employee handbook, at the time that she was terminated. Smith's termination, based on the evidence before this Court, appears to have been the unfortunate culmination a series of miscommunications and missteps by Smith, Concentra, and Liberty Mutual. That Smith ultimately lost her job as a result of these circumstances, some of which were not her fault, is extremely unfortunate, and this Court can understand why Smith would see malicious motives behind those actions. This Court, however, sees no evidence before it to suggest such motives, to call into question Concentra's stated reasons for its actions, or to suggest a retaliatory or discriminatory cause

---

[3] Smith testified that she believed Concentra would not permit her to return to work until her medical restrictions had been lifted. Even if that was the case, however, that did not absolve Smith from the obligation of renewing her FMLA leave or complying with Concentra's policy regarding absences once her FMLA leave had expired.

for Smith's termination.  Accordingly, Smith has failed to establish a genuine dispute of material fact as to her FMLA claim and her disability discrimination claim based on her termination.

**Conclusion**

For the foregoing reasons, the defendants' motion for summary judgment is granted in part and denied in part.  Summary judgment is granted with respect to Count II and Count III and denied with respect to Count I to the extent that Smith alleges failure to reasonably accommodate under the ADA.

IT IS SO ORDERED.

Date:   March 1, 2017

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge